UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIA BLAKE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] Case No.: 2:20-cv-01897-ACA |
| | ] |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ] |
| | ] |
| | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

Tia Blake and Jason Bryant got into a physical altercation while working at a FedEx facility in Birmingham, Alabama. At the time of the altercation, Ms. Blake and Mr. Bryant had access to the facility through a service provider agreement between their employer, Alldredge Trucking, Inc., and Defendant FedEx Ground Package System, Inc. After the fight, FedEx placed Ms. Blake on "no trespass" based on its belief that Alldredge had fired Ms. Blake and instruction from law enforcement. Later, FedEx disqualified Ms. Blake from providing services for FedEx. By contrast, Alldredge did not discipline Mr. Bryant and FedEx did not disqualify him from providing services. Ms. Blake is black; Mr. Bryant is white.

Ms. Blake filed this lawsuit alleging that FedEx intentionally discriminated against her based on her race, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. (Doc. 1). FedEx moves for summary judgment. (Doc. 26). The court **WILL GRANT** the motion. No evidence creates any dispute that FedEx reasonably believed Alldredge fired Ms. Blake and that she was the aggressor in the fight with Mr. Bryant, so no reasonable jury could find that FedEx intentionally discriminated against her because of her race.

I.   BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

Alldredge provides package pickup, transportation, and delivery services to FedEx pursuant to an Independent Service Provider Agreement ("ISPA"). (Doc. 27-1 at 3–4 ¶ 4; *see id.* at 9–30). The ISPA establishes rules for how FedEx employees and Alldredge employees interact with each other. FedEx employees interact exclusively with Alldredge's designated "Authorized Officer" and "Business Contact." (*Id.* at 4 ¶ 9; *see id.* at 14). Alldredge employee Melanie Bryant is the "Business Contact," who "administers day-to-day operations under [the ISPA], including business results and decisions related to [Alldredge's] Personnel." (*Id.* at 4 ¶ 9; *id.* at 14).

Ms. Blake was only employed by Alldredge. (*See* doc. 27-2 at 15; doc. 34 at 1 ¶¶ 2–3). She worked for Alldredge as a delivery driver assigned to work the FedEx ISPA. (*See* doc. 34 at 1 ¶ 2; doc 27-1 at 2 ¶ 6, 4 ¶ 14). Ms. Bryant was Ms. Blake's supervisor. (Doc. 27-2 at 14).

On January 24, 2020, Ms. Blake arrived at FedEx and went to speak to Ms. Bryant. (Doc. 34 at 2 ¶ 7). What happened next is in dispute. Ms. Bryant claims that she told Ms. Blake she was fired. (Doc. 27-3 at 11; doc. 27-1 at 3 ¶ 6). Ms. Blake denies that Ms. Bryant told her she was fired. (Doc. 34 at 2 ¶¶ 7–8; doc. 27-2 at 16). Regardless, as Ms. Blake and Ms. Bryant were talking Jason Bryant, another Alldredge employee and Ms. Bryant's spouse, got in Ms. Blake's work van, "drove to the other end of the terminal, made a U-turn, and proceeded back towards the end where [Ms. Blake] was standing." (Doc. 27-2 at 2 ¶¶ 7–9). Ms. Blake stood in front of the van to get Mr. Bryant to stop so that she could recover her personal belongings from inside the van. (*Id.* at 2 ¶ 10).

Mr. Bryant hit Ms. Blake with the van and then unlocked the van door. (Doc. 34 at 2 ¶¶ 10–11). Ms. Blake entered the van but as soon as she did Mr. Bryant placed her in a headlock. (*Id.* at 2 ¶ 12). Mr. Bryant began punching her in her side and said "you're one of them dumb ass n*****s" as Ms. Blake tried to release from the headlock. (*Id.* at 2 ¶¶ 12–13). Ms. Blake told Mr. Bryant to take his hands off her

and let her go. (Doc. 34 at 2 ¶ 14). Mr. Bryant then drove the van outside the terminal with Ms Blake in the van and parked it off of FedEx property. (Doc. 27-2 at 17).

Ms. Blake ultimately retrieved her belongings from inside the van, fixed her hair and clothes, and walked to the contract dispatch office inside the terminal to try and call Alldredge's "Authorized Officer" to report the incident. (Doc. 27-2 at 18; doc. 34 at 2 ¶ 16). When Ms. Blake did not reach him (doc. 34 at 2 ¶ 16; doc. 27-2 at 18), she went to the FedEx managers' offices. (Doc. 27-2 at 18).

Meanwhile, Mr. and Ms. Bryant went to speak with Kelley Womble, a white FedEx manager, about the altercation. (Doc. 27-1 at 2–3 ¶¶ 2–6). They told Ms. Womble that Ms. Blake was the aggressor and that Alldredge was terminating her employment. (*Id.* at 3 ¶ 6). While they were having this conversation, Ms. Blake approached the office and found herself locked out. (Doc. 27-2 at 18). Ms. Womble did not let Ms. Blake into the office and refused to listen to her statement about the altercation. (*Id.*; doc. 34 at 3 ¶ 18). Instead, Ms. Womble called FedEx Senior Security Specialist Keith Johnstone, who advised Ms. Womble to call the police. (Doc. 28 at 9 ¶ 23; *see also* doc. 27-1 at 3 ¶ 8; doc. 27-3 at 3 ¶¶ 5–6). Ms. Blake told Ms. Womble to view the surveillance camera footage to see what happened, but Ms. Womble "told [Ms. Blake] to get away from her office and that she was going to call the police." (Doc. 34 at 3 ¶ 18). Ms. Womble then called the police. (Doc. 27-3 at 3 ¶ 6).

4

After leaving Ms. Womble's office area, Ms. Blake went to her personal vehicle in the parking lot. (Doc. 34 at 3 ¶ 20). While inside her car, a police officer approached and identified her, arrested her on an unrelated warrant, and took her into custody. (*Id.* at 3 ¶¶ 21–23; doc. 27-2 at 19). Before the police left the property, and at the police's recommendation, Ms. Womble came to the patrol car and said, "[Ms. Blake], I am placing you on trespass. I do not want you back on this property." (Doc. 34 at 3 ¶ 24).

Mr. Johnstone arrived at the FedEx station later that day. (Doc. 27-3 at 3 ¶ 7). Mr. Johnstone took separate statements from Mr. and Ms. Bryant. (*Id.* at 4 ¶¶ 8, 10). He also reviewed the CCTV footage of the terminal. (Doc. 27-3 at 5 ¶ 12). According to Mr. Johnstone, the footage appeared to corroborate Mr. and Ms. Blake's description of the events up to the point where Ms. Blake walked in front of the van causing Mr. Bryant to stop. (*Id.* at 5 ¶¶ 12–13). The Bryants and Ms. Blake are then out of view until Mr. Bryant and Ms. Blake exit the terminal and park outside. (*Id.* at 5 ¶ 13). The footage there depicts Mr. Bryant and Ms. Blake exiting the van and walking back inside the terminal. (*Id.* at 5 ¶ 14). The CCTV footage did not reveal any obvious signs or evidence of violence occurring within the van while it was visible. Finally, Mr. Johnstone confirmed that Ms. Bryant terminated Ms. Blake that day. (Doc. 27-2 at 67).

Three days later, Ms. Blake called the FedEx "Alertline" to report the incident and identify an eyewitness. (*See* doc. 34 at 5–8). Mr. Johnstone received the Alertline report and interviewed the eyewitness. (Doc. 27-3 at 5–6 ¶¶ 16, 18). Mr. Johnstone again reviewed the CCTV footage but could not identify the eyewitness or see the events the witness described. (*Id.* at 6 ¶ 19). Next, Mr. Johnstone called Ms. Blake. (Doc. 27-3 at 6 ¶ 20). Ms. Blake answered the call but refused to speak to Mr. Johnstone other than to inform him that she was contacting an attorney. (*Id.*).

Mr. Johnstone "concluded [his] investigation following Blake's refusal to speak with [him]." (Doc. 27-3 at 6 ¶ 21). He then prepared a "Security Investigative Report" based on his investigation. (*See id.* at 10–12). Ms. Womble later submitted the investigative report and Alldredge's Service Provider Notification of Personnel Change Form to FedEx Business Solutions Manager Ron Moore. (Doc. 27-1 at 5–6 ¶ 18; doc. 27-4 at 3 ¶ 5).

The change of personnel form identified workplace violence as the reason why Ms. Blake would no longer be assigned to work the FedEx ISPA. (Doc. 27-4 at 14). Mr. Moore reviewed the documentation and records provided and determined they showed that "Ms. Blake had already been terminated or was in the process of being terminated at the time of the workplace violence incident." (*Id.* at 5–6 ¶ 15). He then approved the disqualification request. (*Id.* at 5 ¶ 14).

6

## II.   DISCUSSION

Ms. Blake asserts one claim against FedEx for "discrimination in discipline," which is a disparate treatment claim arising from Ms. Womble's calling the police, putting Ms. Blake on "no trespass," and terminating her employment without investigation. (Doc. 1 at 2–3). She brings her claims under both Title VII and § 1981. (*Id.* at 1 ¶ 1). FedEx moves for summary judgment, arguing Ms. Blake has not established a *prima facie* case of race discrimination and she cannot offer any evidence that FedEx's explanations for its actions are pretext for race discrimination. (Doc. 26; doc. 28 at 2).

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

Title VII prohibits employment discrimination against any individual on the basis of race. 42 U.S.C. § 2000e-2(a)(1).[1] Section 1981 provides that "[a]ll persons

---

[1] It is undisputed that FedEx never employed Ms. Blake and Ms. Blake abandoned any theory that FedEx was her joint employer. However, FedEx did not raise this issue in its motion, so the court will analyze the Title VII claim as if Ms. Blake were a FedEx employee.

7

. . . shall have the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). The equal right to make and enforce contracts "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The equal contract rights afforded by § 1981 prohibit intentional race discrimination in private employment. *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459–60 (1975).

When a plaintiff relies on the same set of facts to state both a Title VII and § 1981 claim as Ms. Blake has done here, the claims "have the same requirements of proof and use the same analytical framework." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256–57 (11th Cir. 2012) (quotation marks omitted). And where, as here, a plaintiff relies on circumstantial evidence to prove racial discrimination, there are three different ways to prove her case. Ms. Blake employs the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*See generally* doc. 35 at 3–5; 8–9; *see also id.* at 8).

To make a *prima facie* case of discrimination, Ms. Blake must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) FedEx treated similarly situated employees outside of her protected class more favorably; and (4) she was qualified to do her job. *See McDonnell Douglas*, 411 U.S.

at 802. If Ms. Blake satisfies this burden, the burden shifts to FedEx to articulate a legitimate, non-discriminatory reason for its actions. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If FedEx sustains its burden, then Ms. Blake must offer evidence from which a reasonable jury could find that FedEx's proffered reason is really a pretext for unlawful discrimination. *Id.* at 255–56.

FedEx's only argument about Ms. Blake's ability to establish a *prima facie* case of discrimination is that she has not identified an adequate comparator. (Doc. 28 at 14–20). It contends that Mr. Bryant—the only comparator proffered—was not similarly situated to her. (*Id.*).

A comparator sufficient to establish a *prima facie* case must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1231 (11th Cir. 2019) (en banc). This is a case-specific analysis, but generally means the plaintiff and her comparator would have "engaged in the same basic conduct (or misconduct)," "been subject to the same employment policy, guidelines, or rule," "been under the jurisdiction of the same supervisor," and share a materially similar "employment or disciplinary history." *Id.* at 1227–28. In other words, a plaintiff and her comparator "must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.* at 1228 (quotation marks omitted).

FedEx argues that Ms. Blake was not similarly situated to Mr. Bryant because, in FedEx's view, Ms. Blake was the aggressor in the fight, Ms. Womble believed

9

Alldredge had fired Ms. Blake, and Ms. Blake refused to participate in the investigation. (Doc. 28 at 17–20). This argument misunderstands the comparator analysis. The question at the *prima facie* stage is not whether FedEx reasonably believed Ms. Blake engaged in misconduct, but whether she and Mr. Bryant were so materially similar that the difference in how FedEx treated them gives rise to a reasonable inference of unlawful discrimination. *See Lewis*, 918 F.3d at 1222. FedEx has offered no evidence about the differences in Ms. Blake's and Mr. Bryant's positions, supervisors, or employment or disciplinary history; it focuses instead on the conduct (or misconduct) they engaged in. (*See* doc. 28 at 17–20). But under the facts construed in the light most favorable to Ms. Blake, Mr. Bryant attacked her for no reason and yet she was terminated and Mr. Bryant was not. This is sufficient to establish that Ms. Blake was treated less favorably than a similarly situated individual outside her protected class.

Because Ms. Blake can establish a *prima facie* case of discrimination, the burden shifts to FedEx to articulate a legitimate, non-discriminatory reason for its actions. *Burdine*, 450 U.S. at 254–55. FedEx asserts that (1) Ms. Womble called the police because she had received a credible report of workplace violence; (2) Ms. Womble refused to listen to Ms. Blake's statement about the fight because the ISPA requires FedEx employees to speak only with Alldredge's "Authorized Officer" or "Business Contact"; (3) Ms. Womble placed Ms. Blake on "no trespass

status" because Mr. Johnstone recommended doing so; (4) Ms. Womble had Mr. Johnstone investigate the incident; and (5) FedEx disqualified Ms. Blake from working there any further because it believed Alldredge had terminated her. (Doc. 28 at 21–26).

Because FedEx has proffered legitimate, non-discriminatory reasons for its actions, the burden returns to Ms. Blake to offer evidence that FedEx's reasons were pretext for discrimination. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). To establish that a reason was pretextual, the plaintiff must present evidence that each reason "was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). So, Ms. Blake's burden at this point is two-fold: she first must prove that each of FedEx's explanations is false, and then she must prove that the real reason for each action was the fact she was Black.

Ms. Blake argues that FedEx's explanation for Ms. Womble calling the police is false because Mr. Bryant was the aggressor. (Doc. 35 at 1, 6–7, 12). But Ms. Womble's mistaken belief that Ms. Blake was the aggressor does not establish pretext. At the pretext stage, the court's focus is not whether the decisionmaker's reason for the employment decision "is a correct one, but whether it is an honest one." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *see also Flowers v.*

*Troup Cnty. Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges. [The courts] are not a 'super-personnel department' assessing the prudence of routine employment decisions, 'no matter how medieval,' 'high-handed,' or 'mistaken.'"); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."). Although the evidence construed in the light most favorable to Ms. Blake establishes that Mr. Bryant was the aggressor, no evidence questions the honesty and reasonableness of Ms. Womble's belief that Ms. Blake was the aggressor. The Bryants reported to Ms. Womble that Ms. Blake attacked Mr. Bryant and no evidence suggests that Ms. Womble had any reason to doubt them. So, Ms. Blake has not undermined FedEx's race-neutral explanation for Ms. Womble calling the police.

Likewise, no evidence questions FedEx's explanation that Ms. Womble did not hear Ms. Blake's statement after the altercation because Ms. Blake was not Alldredge's "Authorized Officer" or "Business Contact" with whom Ms. Womble could interact under the ISPA. Ms. Blake has not disputed that ISPA limitation. Also, no evidence disputes that Ms. Womble heard Mr. Bryant's statement because Ms.

Bryant, who was the "Business Contact," brought him into Ms. Womble's office. And it is undisputed that Ms. Womble broke the ISPA restriction when she told Ms. Blake that she could not return to FedEx property because the police told her to do so. So, Ms. Blake has not shown that FedEx's second proffered legitimate, non-discriminatory reason is false.

Ms. Blake's challenge to FedEx's explanation for Ms. Womble placing her on "no trespass" status fares no better. Ms. Womble told Mr. Johnstone that Ms. Blake attacked her coworker based on the Bryants' report, so it was reasonable for Mr. Johnstone to recommend that Ms. Womble call the police and place Ms. Blake on "no trespass" status. Again, although Ms. Womble mistakenly believed that Ms. Blake was the aggressor, she still reasonably and honestly held that belief and Mr. Johnstone had no reason to doubt her.

Next, no evidence casts suspicion on FedEx's explanation for Mr. Johnstone investigating the incident or the investigation itself. Mr. Johnstone initiated his investigation because Ms. Womble reasonably and honestly reported workplace violence. Mr. Johnstone did not take Ms. Blake's statement when he arrived at the FedEx terminal because Ms. Blake was gone by the time he arrived. Mr. Johnstone later could not hear Ms. Blake's side of the story because she refused to speak with him. And, to the extent that Ms. Blake takes issue with FedEx's investigation

findings, she does not allege that FedEx did not consider all the evidence it had available to it.

Further, no evidence contradicts FedEx's explanation that it disqualified Ms. Blake from providing services under the ISPA because it believed that Alldredge had already terminated her employment. Even if Ms. Blake had not yet been terminated when FedEx disqualified her, FedEx still honestly and reasonably believed that Alldredge terminated Ms. Blake on the day of the altercation. Indeed, Ms. Blake concedes that Ms. Womble was told that Ms. Blake had been terminated before she called the police. (Doc. 27-2 at 18–19 61:17-62:11). And all of the information available to the final decisionmaker, Mr. Moore, indicated that "Ms. Blake had already been terminated or was in the process of being terminated at the time of the workplace violence incident." (Doc. 27-4 at 5–6 ¶ 15; *see also id.* at 12, 17).

Finally, not only has Ms. Blake not presented evidence that any of FedEx's five explanations are false, she also has not presented evidence that her race was the real reason for any of FedEx's decisions. She offers nothing more than conclusory allegations of racial discrimination. (Doc. 35 at 10 ("If no discrimination occurred, how come I am the only one being punished and suffering the consequences"; "[Ms. Womble's] actions clearly demonstrated racism, discrimination, . . . . She decided that because I am a Black woman that I did not matter in the situation.")). But

conclusory statements are not considered when ruling on summary judgment and in the absence of any evidence establishing "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions," Ms. Blake has failed to establish pretext. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016).

Because Ms. Blake failed to establish pretext, her claim that FedEx discriminated against her on the basis of race fails even if the court assumes she established a *prima facie* case of discrimination.

### III. CONCLUSION

For the reasons explained above, the court **WILL GRANT** FedEx's motion for summary judgment as to Ms. Blake's disparate treatment claim brought under Title VII and § 1981. The court will enter summary judgment in favor of FedEx on that claim.

The court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 12, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE